## Thee's Estate

*David H. Rosenbluth*, for accountants.

*James P. McCormick*, for Alien Property Custodian.

BOLGER, J., October 14, 1943.—This decedent died on January 15, 1943, leaving a will which was duly admitted to probate, and leaving neither husband nor issue.

Letters testamentary were granted to the accountants on January 22, 1943; proof of publication of the grant of same was submitted.

The payment of transfer inheritance tax, $135.49 on $1,426.72 on April 10, 1943, was duly vouched.

By the terms of her will, testatrix directed the manner and place of burial and that an inscription be placed on the headstone over her burial lot, and gave her residuary estate in equal shares to a brother, Rev. Anton Muzar, residing in Buzias, Roumania; a sister, Elizabeth Muzar Marx, residing in Hetin, Jugoslavia; and a sister, Rosalia Muzar Koveinal, residing in Jimbolia, Roumania. It was directed that if any of the legatees should predecease testatrix then that share should be distributed to the surviving children or lineal descendants of the one so deceased, and in the event

that such deceased legatee should not leave any children or lineal descendants then the share to be distributed to the surviving brother, sister, or sisters named. The accountants were named as executors of the will. The third item of the will, and one which gives rise to a question which will be discussed and passed upon hereunder, reads as follows:

"THIRD: In view of the state of war now existing between the United States and various other nations, it is my direction that any moneys which are to be paid to persons residing in countries to which funds may not legally be transmitted shall continue to be held by my executors hereinafter named with full power in such executors to invest and reinvest such funds allowing the income to accumulate until such time as the funds may be legally transmitted to such persons residing in foreign countries."

All of the legatees reside in foreign countries, and, because of the state of war existing, the accountants do not know whether they survived decedent. Two of the parties, Anton Muzar and Rosalia Muzar Koveinal, when last seen or heard from, resided in Roumania, an enemy country; and the other sister, Elizabeth Muzar Marx, resided in Jugoslavia, a country occupied by the enemy. Notice of the audit was given to the Alien Property Custodian of the United States, and, under a vesting order no. 2158, dated September 7, 1943, and duly filed with the clerk of this court, the distributive shares of Anton Muzar and Rosalia Muzar Koveinal, and their children and lineal descendants (names unknown), were vested to be held, used, administered, liquidated, sold or otherwise dealt with in the interest of and for the benefit of the United States. It is the position of the Alien Property Custodian that all of the benefits bestowed upon Anton Muzar and Rosalia Muzar Koveinal under the will are now his absolute property and should be awarded and paid to him forthwith. It is the contention of the

executors that title to the residuary estate should pass to them as trustees to hold the funds until such time as same can be legally forwarded to the foreign legatees. As I understand it, the argument of counsel for the executors is that the will creates a *trust* for the benefit of the brother and sisters of decedent, and it deprives them of possession and enjoyment of both principal and income until such time as the funds can be legally transmitted; and, since the rights of the Alien Property Custodian can rise no higher than those of the beneficiaries, he should likewise be precluded from possession of the funds.

It is my opinion that the right of the Alien Property Custodian to seize these funds cannot be denied on the ground that the will creates a trust. Nowhere in this will can there be found a dominant intention to create a trust. It must be conceded that the second item contains outright bequests of the residuary estate. The third item does not, to my mind, show any clear intention to take away or reduce the estates previously given in fee. The general canon of construction in this regard is that a fee once given is not to be cut down to a lesser estate by subsequent provisions, unless the subsequent provisions are expressed in clear and unambiguous language. In this connection see cases cited in I Hunter's Pennsylvania Orphans' Court Commonplace Book 374, 375. The third item of the will merely directs that the funds in question be held by the executors with power to invest and reinvest, allowing the income to accumulate until such time as the funds may be legally transmitted. There is no segregation of the legal and equitable titles, with a gift of the legal title to the executors, as is the test of a valid trust. The direction is merely to withhold distribution of the gifts previously bequeathed outright. Even if the third paragraph of the will were to be construed as a clear expression of a dominant purpose to create a trust, the direction to accumulate income would be

sufficient to render the trust void under the Act of April 18, 1853, P. L. 503.

Aside from the purely legal aspects of the case, it is my opinion that it would be against public policy for this court to sanction a testamentary direction which would deprive the Government of its sovereign right to seize and hold property the title to which is vested in alien enemies. In this connection it is to be noted that, while the will was executed on December 15, 1942, war was declared with Roumania before that date.

For reasons as stated, the distributive shares of Anton Muzar and Rosalia Muzar Koveinal (each one third) will be awarded hereunder to the Alien Property Custodian. The share of Elizabeth Muzar Marx, who resides in Jugoslavia, a country with which we are not at war but which is occupied by the enemy, will be awarded to her; conditioned, however, upon it being held and distributed under regulations and orders of the United States Treasury Department and the Alien Property Custodian concerning blocked accounts of foreign nationals. . . .

Leave is hereby granted the accountants to make all necessary transfers and assignments.

And now, October 14, 1943, the account is confirmed nisi.